UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEIJIE XIAN,<br><br>                Plaintiff,<br><br>    v.<br><br>PORTOLA PHARMACEUTICALS, INC., HOLLINGS C. RENTON, JEFFREY BIRD, LAURA BREGE, DENNIS FENTON, SCOTT GARLAND, JOHN H. JOHNSON, TED LOVE, DAVID C. STUMP, and H. WARD WOLFF,<br><br>                Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Weijie Xian ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Portola Pharmaceuticals, Inc., ("Portola" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Portola's website concerning the Company's public statements; and (d) review of other publicly available information concerning Portola and the Defendants.

## **NATURE OF THE ACTION**

1. Plaintiff brings this action on behalf of the public shareholders of Portola against the Company and members of the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by Alexion Pharmaceuticals, Inc. ("Alexion") (the "Proposed Transaction").

2. On May 5, 2020, Portola announced that the Company had entered into an agreement and plan of merger with Alexion (the "Merger Agreement"), pursuant to which Alexion will acquire all outstanding shares of Portola (the "Tender Offer") for $18.00 in cash per share of Portola common stock (the "Offer Price"). The Tender Offer is scheduled to expire on July 1, 2020.

3. On May 27, 2020, the Company filed an incomplete and materially misleading Recommendation Statement with the SEC (the "Recommendation Statement") on Form 14D-9 in connection with the Proposed Transaction. The Recommendation Statement omits material information concerning the Proposed Transaction.

4. Accordingly, the failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Portola stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

5. As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. In addition, the Company's common stock trades on the NASDAQ Global Select Market ("NASDAQ"), which is headquartered in this District.

**THE PARTIES**

9. Plaintiff has been the owner of the common stock of Portola since prior to the transaction herein complained of and continuously to date.

10. Defendant Portola is a Delaware corporation with its principal executive offices located at 270 E. Grand Avenue, South San Francisco, CA 94080. The Company's stock trades on the NASDAQ under the ticker "PTLA."

11. Defendant Hollings C. Renton ("Renton") is and has been the Chairman of the Company's Board at all times during the relevant time period.

12. Defendant Jeffrey Bird ("Bird") is and has been a director of the Company at all times during the relevant time period.

13. Defendant Laura Brege ("Brege") is and has been a director of the Company at all times during the relevant time period.

14. Defendant Dennis Fenton ("Fenton") is and has been a director of the Company at all times during the relevant time period.

15. Defendant Scott Garland ("Garland") is and has been the Company's President, Chief Executive Officer, and a director of the Company at all times during the relevant time period.

16. Defendant John H. Johnson ("Johnson") is and has been a director of the Company at all times during the relevant time period.

17. Defendant Ted Love ("Love") is and has been a director of the Company at all times during the relevant time period.

18. Defendant David C. Stump ("Stump") is and has been a director of the Company at all times during the relevant time period.

19. Defendant H. Hard Wolff ("Wolff") is and has been a director of the Company at all times during the relevant time period.

20. Defendants Renton, Bird, Brege, Fenton, Garland, Johnson, Love, Stump, and Wolff are collectively referred to herein as the "Individual Defendants."

21. Defendant Portola, along with the Individual Defendants, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

22. Portola is a biopharmaceutical company focused on the development and commercialization of novel therapeutics in the areas of thrombosis, other hematologic diseases and inflammation.

23. The Company's lead product is Andexxa, an antidote approved by the U.S. Food and Drug Administration ("FDA") and the European Commission ("EC") for patients treated with rivaroxaban or apixaban, when reversal of anticoagulation is needed due to life-threatening or uncontrolled bleeding.

**The Company Announces the Proposed Transaction**

24. On May 5, 2020, Portola issued a press release announcing that the Company had entered an agreement in connection with the Proposed Transaction. The press release stated, in pertinent part:

> BOSTON & SOUTH SAN FRANCISCO, Calif.--(BUSINESS WIRE)—Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Portola Pharmaceuticals, Inc. (NASDAQ:PTLA) announced today that they have entered into a definitive merger agreement for Alexion to acquire Portola, a commercial-stage biopharmaceutical company focused on life-threatening blood-related disorders. Portola's commercialized medicine, Andexxa® [coagulation factor Xa (recombinant), inactivated-zhzo], marketed as Ondexxya® in Europe, is the first and only approved Factor Xa inhibitor reversal agent, and has demonstrated transformative clinical value by rapidly reversing the anticoagulant effects of Factor Xa inhibitors rivaroxaban and apixaban in severe and uncontrolled bleeding. The acquisition will add near-term diversification to Alexion's commercial portfolio and provides the opportunity to apply the company's demonstrated global commercial excellence to create long-term value for patients and shareholders. The merger agreement has been unanimously approved by the boards of Alexion and Portola.
>
> "The acquisition of Portola represents an important next step in our strategy to diversify beyond C5. Andexxa is a strategic fit with our existing portfolio of transformative medicines and is well-aligned with our demonstrated expertise in hematology, neurology and critical care," said Ludwig Hantson, Ph.D., Chief

Executive Officer of Alexion. "We believe Andexxa has the potential to become the global standard of care for patients who experience life-threatening bleeds while taking Factor Xa inhibitors apixaban and rivaroxaban. By leveraging Alexion's strong operational and sales infrastructure and deep relationships in hospital channels, we are well positioned to expand the number of patients helped by Andexxa, while also driving value for shareholders."

"In developing and launching Andexxa, Portola has established a strong foundation for changing the standard of care for patients receiving Factor Xa inhibitors that experience a major, life-threatening bleed. Andexxa rapidly reverses the pharmacologic effect of rivaroxaban and apixaban within two minutes, reducing anti-Factor Xa activity by 92 percent," said Scott Garland, President and Chief Executive Officer of Portola. "Given their enhanced resources, global footprint and proven commercial expertise, we look forward to working with Alexion to maximize the value of Andexxa. With their commitment to commercial excellence, together, we will be able to drive stronger utilization of Andexxa, increase penetration and accelerate adoption in the critical care setting."

**Transaction Details**

Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Portola common stock, the expiration or termination of the waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976 and receipt of certain other regulatory approvals.

Following successful completion of the tender offer, Alexion will acquire all remaining shares not tendered in the offer at the same price of $18 per share through a merger. The transaction is expected to close in the third quarter of 2020.

Alexion will fund the transaction with cash on hand. As part of the acquisition, Alexion will also be acquiring cash currently on Portola's balance sheet, net of debt of approximately $215 million that will become due upon closing. As of December 31, 2019, cash and short-term investments were approximately $430 million. The actual amounts will be determined as of the transaction close.

RBC Capital Markets, LLC served as Alexion's exclusive financial advisor. Centerview Partners served as Portola's exclusive financial advisor. Cooley LLP served as Portola's legal advisor.

Executive Officer of Alexion. "We believe Andexxa has the potential to become the global standard of care for patients who experience life-threatening bleeds while taking Factor Xa inhibitors apixaban and rivaroxaban. By leveraging Alexion's strong operational and sales infrastructure and deep relationships in hospital channels, we are well positioned to expand the number of patients helped by Andexxa, while also driving value for shareholders."

"In developing and launching Andexxa, Portola has established a strong foundation for changing the standard of care for patients receiving Factor Xa inhibitors that experience a major, life-threatening bleed. Andexxa rapidly reverses the pharmacologic effect of rivaroxaban and apixaban within two minutes, reducing anti-Factor Xa activity by 92 percent," said Scott Garland, President and Chief Executive Officer of Portola. "Given their enhanced resources, global footprint and proven commercial expertise, we look forward to working with Alexion to maximize the value of Andexxa. With their commitment to commercial excellence, together, we will be able to drive stronger utilization of Andexxa, increase penetration and accelerate adoption in the critical care setting."

**Transaction Details**

Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Portola common stock, the expiration or termination of the waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976 and receipt of certain other regulatory approvals.

Following successful completion of the tender offer, Alexion will acquire all remaining shares not tendered in the offer at the same price of $18 per share through a merger. The transaction is expected to close in the third quarter of 2020.

Alexion will fund the transaction with cash on hand. As part of the acquisition, Alexion will also be acquiring cash currently on Portola's balance sheet, net of debt of approximately $215 million that will become due upon closing. As of December 31, 2019, cash and short-term investments were approximately $430 million. The actual amounts will be determined as of the transaction close.

RBC Capital Markets, LLC served as Alexion's exclusive financial advisor. Centerview Partners served as Portola's exclusive financial advisor. Cooley LLP served as Portola's legal advisor.

# FALSE AND MISLEADING STATEMENTS
# AND/OR MATERIAL OMISSIONS IN THE RECOMMENDATION STATEMENT

25. On May 27, 2020, the Company authorized the filing of the Recommendation Statement with the SEC. The Recommendation Statement recommends that the Company's stockholders tender their shares in favor of the Proposed Transaction.

26. Defendants were obligated to carefully review the Recommendation Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresent and/or omit material information that is necessary for the Company's shareholders to make informed decisions concerning whether to tender their shares in favor of the Proposed Transaction.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding Managements Projections

27. The Recommendation Statement contains financial projections prepared by senior members of Portola's management in connection with the Proposed Transaction, but fails to provide material information concerning such.

28. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

7

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

29.  In order to make management's projections included in the Recommendation Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

30.  Specifically, with respect to each set of financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to, all line items used to calculate Unlevered Free Cash Flow.

31.  Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Centerview's Opinion Statement

32.  The Solicitation Statement contains the financial analyses and opinion of Centerview Partners LLC ("Centerview") concerning the Proposed Transaction but fails to provide material information concerning information relied on by Barclays in rendering its opinion.

33.  With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying Centerview's selection of the discount rate range of 9.5% to 11.5%; (ii) the inputs and

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

assumptions underlying Centerview's selection of the range of rates of free cash flow decline of 30.0% to 20.0%; and (iii) the fully diluted shares outstanding of Portola.

34. With respect to Centerview's analysis of price targets, the Recommendation Statement fails to disclose which specific targets were selected for its analysis, as well as the sources of such information.

35. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

36. Without the above described information, the Company's shareholders are not fully informed with respect to the Proposed Transaction. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(d)
of the Exchange Act and Rule 14d-9 Promulgated Thereunder)**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder makes it a requirement to make full and complete disclosure in connection with tender offers.

39. As discussed herein, the Recommendation Statement, while soliciting shareholder support for the Proposed Transaction, misrepresent and/or omit material facts concerning the Proposed Transaction.

40. Defendants prepared, reviewed, filed and disseminated the false and misleading Recommendation Statement to Portola shareholders. In doing so, Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in favor of the Proposed Transaction. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

42. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Proposed Transaction negotiation and sales process and reviewing Portola's financial advisor's complete financial analyses purportedly summarized in the Recommendation Statement.

43. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

44. Portola is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Recommendation Statement.

45. Defendants knew that Plaintiff and other shareholders would rely upon the Recommendation Statement in determining whether to tender their shares in favor of the Proposed Transaction.

46. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder, absent injunctive relief from the Court, Plaintiff and other shareholders will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

47. Plaintiff has no adequate remedy at law.

## COUNT II

**(Against All Defendants for Violation
Of Section 14(e) of the Exchange Act)**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made false statements of material fact or failed to state all material facts that would be necessary to make the statements made, in light of the circumstances, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction.

50. Defendants knew that Plaintiff and the Company's shareholders would rely upon their statements made in the Recommendation Statement in determining whether to tender shares in favor of the Proposed Transaction.

51. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff

and other shareholders will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

## COUNT III

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Portola within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Portola, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement contain the unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transaction. They were thus directly connected with and involved in the making of the Recommendation Statement.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

57. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for their damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 3, 2020

Respectfully submitted,

By: /s/ Joshua M. Lifshitz
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*